FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2024-1393
_____

LOGAN TORBIT,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____


On appeal from the Circuit Court for Leon County.
Jonathan Sjostrom, Judge.

July 29, 2026


WINOKUR, J.

The trial court convicted Logan Torbit of sexual battery on a victim while she was physically helpless to resist, following jury trial. We address only one issue Torbit raises in this appeal: did the trial court abuse its discretion when it excluded evidence that, according to the defense, suggested that it was the prosecution's key witness who raped the victim rather than Torbit. We conclude that the exclusion did not constitute reversible error.

# I

This case involves a sordid night of extensive sexual activity between Torbit, Brad Pasinski, T.B. (the victim in this case) and J.D. (whose name is redacted because she was only seventeen years old at the time) on July 2, 2018. Torbit and Pasinski both had sex with J.D., both simultaneously and separately. T.B. engaged in sexual activity as well, but at the time she ranged from highly intoxicated to barely conscious and incapable of consent. The night resulted in a charge of sexual battery against Torbit, with Pasinski, T.B., and J.D., testifying against him at trial.

Part of Torbit's defense was to present the possibility that Pasinski, rather than Torbit himself, had sexually battered T.B. To support this defense, Torbit sought to introduce evidence that Pasinski sexually battered a different victim, B.B., on May 23, 2019, over ten months after the sexual battery of T.B. On that night, officers responded to a sexual battery call. When officers knocked on B.B.'s apartment door, Pasinski answered. B.B. was wearing a towel because Pasinski told her to shower after the alleged sexual battery.

According to Torbit, the fact that Pasinski told B.B. to shower after the sexual battery was related to the charge involving T.B. That is, on the night of the sexual battery in this case, Pasinski helped an intoxicated T.B., who had been vomiting, into a bathtub, where he and J.D. bathed T.B and then moved her to her bed. Torbit theorized that Pasinski learned from T.B.'s sexual battery how to remove DNA from a woman he rapes—either bathe her (if she's physically helpless) or force her to bathe (if she's conscious). As proof, Torbit pointed to the text message Pasinski sent his father on January 23, 2019, which read, "no DNA came back for anyone."

Torbit sought to introduce evidence of the B.B. incident as so-called "reverse *Williams* Rule" evidence, admissible under section 90.404(2)(c), Florida Statutes. Torbit argued that the bathing *after* the sexual battery—not anything about the sexual battery itself— was Pasinski's "signature move," as follows: "Pasinski's signature move in T.B.'s case, to wash her down in the bathtub preventing

any DNA from being found, was repeated in the subsequent case, by putting B.B. in the shower and ordering her to clean herself."

Instead of proffering the testimony of B.B., however, Torbit asked the trial court to review the bodycam footage from a responding officer. Ultimately, the trial court ruled that the evidence of the B.B. incident was inadmissible.

The jury found Torbit guilty of sexual battery on a victim physically helpless to resist. Although Torbit faced a maximum possible sentence of thirty years in prison with a lowest permissible sentence of 6.5 years, the trial court imposed a downward departure sentence of three years in prison followed by three years of sex offender probation. The court admitted that there was no statutory basis for the departure, but the State has not appealed the sentence.

Torbit claims on appeal that the trial court erred when it excluded evidence of the sexual offense involving B.B.[1] Specifically, Torbit claims that Pasinski's rape of B.B. is evidence of a collateral sexual offense admissible under section 90.404(2)(c). In making this argument, Torbit disclaims any suggestion that the evidence is admissible under section 90.404(2)(a) because that paragraph requires "a unique fingerprint" not required for collateral sexual offenses under paragraph (2)(c), or that the evidence is otherwise admissible.

II
A

A survey of the provisions of the Evidence Code relating to relevance helps place the requirements of section 90.404(2)(c) into perspective. First, relevant evidence is "evidence tending to prove or disprove a material fact[,]" and "[a]ll relevant evidence is admissible, except as provided by law." §§ 90.401, 90.402, Fla. Stat. Even if relevant, however, evidence cannot be admitted "if its

---

[1] "A trial court's exclusion of reverse *Williams* rule evidence is reviewed for an abuse of discretion." *Peterson v. State*, 399 So. 3d 394, 396 (Fla. 1st DCA 2025) (citation omitted).

probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. "For relevant, probative evidence 'to be deemed unfairly prejudicial, it must go beyond the inherent prejudice associated with any relevant evidence.'" *See Valentine v. State*, 307 So. 3d 726, 735 (Fla. 4th DCA 2020) (internal citation omitted).

In *Williams v. State*, the Supreme Court of Florida addressed the admissibility of "so-called similar fact evidence which tends to reveal the commission of a collateral crime." 110 So. 2d 654, 658 (Fla. 1959). The rules set forth in *Williams* were later codified as section 90.404(2)(a), Florida Statutes, as follows: "Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity." The requirements of this statutory provision are often called the "*Williams* rule."

Rather than providing a separate avenue for the admission of evidence, however, section 90.404(2)(a) is "merely a special application of the general rule that all relevant evidence is admissible unless specifically excluded by a rule of evidence." *Bryan v. State*, 533 So. 2d 744, 746 (Fla. 1988).

Even if similar fact evidence of other crimes, wrongs, or acts meets the standards of section 90.404(2)(a), such evidence can still be inadmissible under section 90.403. *See Williams v. State*, 621 So. 2d 413, 415 (Fla. 1993) ("[E]vidence of other crimes that is relevant and therefore not barred by section 90.404(2)(a), may be excluded under section 90.403 if its probative value is substantially outweighed by undue prejudice." (citation omitted)). Ultimately, similar fact evidence of other crimes, wrongs, or acts offered to prove bad character or propensity is inadmissible under section 90.404(2)(a), whereas similar fact evidence of other crimes, wrongs, or acts offered to prove any other relevant matter—just like any other evidence—might be inadmissible under section 90.403.

Much has been written over the level of similarity between the charged crime and a "similar" crime that is necessary before evidence of the similar crime is admissible. "A mere general similarity [between the charged crime and a similar crime] will not render the similar facts legally relevant to show identity." *Drake v. State*, 400 So. 2d 1217, 1219 (Fla. 1981). Instead, similar fact evidence to provide identity is admissible "based on both the similarity of *and the unusual nature of the factual situations being compared*[,]" including "identifiable points of similarity which pervade the compared factual situations." *Id.* "[I]n order for the similar facts to be relevant *the points of similarity must have some special character or be so unusual as to point to the defendant.*" *Id.* (emphases supplied); *see also Saffor v. State*, 660 So. 2d 670 (Fla. 1995); *Heuring v. State*, 513 So. 2d 122 (Fla. 1987). Of note, however, the phrases "unusual nature," "special character," and "so unusual" do not appear in the actual text of section 90.404.[2]

B

"'Reverse *Williams* rule' evidence is evidence of a crime committed by another person that a defendant offers to show his or her innocence of the instant crime." *McDuffie v. State*, 970 So. 2d 312, 323 n.2 (Fla. 2007). Like other evidence admitted to demonstrate identity, the defendant must show a "close similarity of facts, a unique or 'fingerprint' type of information" for reverse

---

[2] Our analysis does not address what may be termed "dissimilar fact evidence of other crimes." While section 90.404(2)(a) creates "a special limitation governing the admissibility of similar fact evidence[,]" it does not apply to "evidence of a defendant's collateral bad acts [that] bears no logical resemblance to the crime for which the defendant is being tried[.]" *Sexton v. State*, 697 So. 2d 833, 837 (Fla. 1997). For this evidence, "the general rule in section 90.402 controls." *Id.* For example, a trial court may admit evidence of a collateral crime that is "inextricably intertwined" with the charged offense. *See Griffin v. State*, 639 So. 2d 966, 968 (Fla. 1994) (noting that such evidence is "not *Williams* rule evidence" and is "admissible under section 90.402" if it is "'necessary to admit the evidence to adequately describe the deed.'").

*Williams* rule evidence to be admissible. *State v. Savino*, 567 So. 2d 892, 894 (Fla. 1990).

The admissibility of reverse *Williams* Rule evidence is determined the same way that any other similar fact evidence under section 90.404. "If a defendant's purpose is to shift suspicion from himself to another person, evidence of past criminal conduct of that other person should be of such nature that it would be admissible if that person were on trial for the present offense." *See Savino*, 567 So. 2d at 894.

C

In 2001, the Legislature amended section 90.404 by adding present-day paragraph (2)(b), which reads in part: "In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Ch. 2001-221, § 1, Laws of Fla.

Unlike paragraph (2)(a), paragraph (2)(b) does not require any similarity between the charged offense and the collateral offense. *See McLean v. State*, 934 So. 2d 1248, 1259 (Fla. 2006) ("Section 90.404(2)(b) broadly provides that evidence of the defendant's commission of other acts of child molestation is admissible regardless of whether the charged and collateral offenses occurred in the familial context or whether they share any similarity."). Despite this, the Supreme Court of Florida held that section 90.403, Florida Statutes, still requires an analysis of similarity between the charged offense and the collateral act of child molestation to determine admissibility. *See McLean*, 934 So. 2d at 1259 ("The similarity of the collateral act of molestation and charged offense is a critical consideration for the trial court in conducting an appropriate weighing under section 90.403."); *see also Reyna v. State*, 302 So. 3d 1025, 1030 (Fla. 4th DCA 2020) ("Central to the section 90.403 analysis mandated by *McLean* is the notion of similarity between the collateral act and the charged offense."). The Court also indicated "closeness in time of the prior acts to the act charged[,]" "the frequency of the prior acts[,]" and "the presence or lack of intervening circumstances" in a non-

exclusive list of factors to be considered in determining whether admission was permissible under sections 90.404(2)(b) and 90.403. *McLean*, 934 So. 2d at 1262.

In 2011, the Legislature again amended section 90.404(2) by adding present-day paragraph (2)(c), expanding the special rule provided in paragraph (2)(b) to all sexual offenses: "In a criminal case in which the defendant is charged with a sexual offense, evidence of the defendant's commission of other crimes, wrongs, or acts involving a sexual offense is admissible and may be considered for its bearing on any matter to which it is relevant." Ch. 2011-220, § 2, Laws of Fla.

Like paragraph (2)(b) (and unlike paragraph (2)(a)), paragraph (2)(c) does not require any similarity between the charged offense and the collateral act. Nevertheless, because the language of paragraphs (2)(b) and (2)(c) are similar, courts have applied the holding of *McLean* to cases involving evidence of collateral acts involving a sexual offense. *See, e.g., Jackson v. State*, 384 So. 3d 811, 814 (Fla. 1st DCA 2024) (applying the *McLean* factors to evidence of a collateral act involving a sexual offense under section 90.404(2)(c)).

Thus, as with collateral acts of child molestation, collateral acts involving a sexual offense require some level of similarity with the charged offense, in accordance with *McLean. See Whisby v. State*, 262 So. 3d 228, 232 (Fla. 1st DCA 2018) ("Regardless of whether the crimes are 'strikingly similar,' which would permit admission under section 90.404(2)(a), they are similar enough to support admission under the analysis outlined in *McLean*." (citation omitted)).

Paragraph (2)(a) of section 90.404 contains no express limitation on who can be the subject of evidence of "other crimes, wrongs, or acts." In contrast, paragraphs (2)(b) and (2)(c) include an express limitation on whose "other crimes, wrongs, or acts involving a sexual offense" they address: they only apply to "evidence of the *defendant's* commission" of such acts. §§ 90.404(2)(b)1., (c)1., Fla. Stat. (emphasis supplied).

## III

Torbit claims that he was entitled to introduce evidence of the sexual battery against B.B. because section 90.404(2)(c) permits a "relaxed standard" for admission of collateral sexual offenses. However, by its express terms, section 90.404(2)(c) only permits the admission of "evidence of the *defendant's commission* of other crimes, wrongs, or acts involving a sexual offense." § 90.404(2)(c)1., Fla. Stat. (emphasis supplied). Therefore, section 90.404(2)(c) does not apply to evidence of a collateral act involving a sexual offense committed by someone other than the defendant. Accordingly, we reject Torbit's argument that section 90.404(2)(c) applies to admission of evidence involving the sexual battery of B.B.

But even if such "reverse *Williams* Rule" evidence were admissible under section 90.404(2)(c), we would still affirm because Torbit failed to proffer the testimony of the victim of the collateral sexual offense. *See Lucas v. State*, 568 So. 2d 18, 22 (Fla. 1990) (refusing to consider a claim that denial of admission was error because the defense "did not proffer what the witness would have said if allowed to answer the question[,]" which is "necessary to preserve a claim such as this because an appellate court will not otherwise speculate about the admissibility of such evidence." (citations omitted)). Without a sufficient proffer, Torbit cannot show how the trial court misapplied the factors articulated in *McLean* (again, even if Torbit were permitted to claim admissibility under section 90.404(2)(c)). Torbit notes that, if Pasinski had been on trial for sexually battering T.B., then the State would have been permitted to introduce evidence of Mr. Pasinski's alleged sexual battery of B.B. In making this argument, however, Torbit fails to acknowledge that, prior to the admission of such evidence, the State would be required to satisfy the factors outlined in *McLean*. Based on our reading of the record, Torbit never addressed that requirement.

While Torbit could have sought admission of the B.B. incident under section 90.404(2)(a), he specifically disclaimed reliance on that paragraph. But even if he had, we could not conclude based on our record that admission would have been required. For example, Torbit never argued that Pasinski's supposed destruction of DNA evidence *after* a sexual battery qualified as collateral act

8

evidence relevant to prove plan, preparation, or knowledge.[3] We find no abuse of discretion in denying admission, especially considering that Torbit failed to establish the relevance of the collateral act through a sufficient proffer. *See Gore v. State*, 784 So. 2d 418, 431–32 (Fla. 2001) (noting that a failure to proffer prevented the court from assessing the relevance of the collateral crime).

## IV

For the reasons set forth above, we AFFIRM the judgment and sentence rendered below.

RAY, J., concurs; TREADWELL, J., concurs with opinion.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

---

[3] According to Torbit, Pasinski learned during the sexual battery of T.B. how to destroy DNA evidence and then used that newfound knowledge to destroy evidence when he sexually battered B.B. Under this theory, Pasinski learned how to destroy evidence by happenstance. But for T.B.'s vomiting, Pasinski never would have bathed T.B. and never would have washed away his DNA. Put another way, Pasinski had *no plan* to destroy evidence when he allegedly raped T.B. Certainly, if Pasinski were on trial for the sexual battery of B.B., the State may have offered the sexual battery of T.B. as prior bad act evidence relevant to prove Pasinski's *modus operandi*. In other words, the first incident might have been relevant to prove Pasinski's plan, preparation, or knowledge on how to commit the second incident. But that is different from offering Pasinski's destruction of DNA evidence during the later incident as "Reverse *Williams* Rule" evidence in the trial of Torbit for the earlier incident.

9

TREADWELL, J., concurring.

I fully concur in the majority opinion, and I write separately to further explain why there is no "reverse *Williams* rule" under section 90.404(2)(c), Florida Statutes, and why Torbit failed to preserve his constitutional arguments attempting to create a "reverse" rule under that section.

I

As noted in the majority opinion, the case of *Williams v. State*, 110 So. 2d 654 (Fla. 1959), recognized the rule of evidence allowing the introduction of similar fact evidence of other crimes or acts committed by the defendant that are relevant to prove a material matter in the prosecution. *McDuffie v. State*, 970 So. 2d 312, 324 n.2 (Fla. 2007). The "*Williams* rule" is now codified at section 90.404(2)(a), Florida Statutes, which states,

> Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

§ 90.404(2)(a), Fla. Stat. (2024); *State v. Savino*, 567 So. 2d 892, 893 n.1 (Fla. 1990).

The "reverse *Williams* rule" derives from the principle that "an accused may show his or her innocence by proof of the guilt of another." *Rivera v. State*, 561 So. 2d 536, 539 (Fla. 1990) (citing *Moreno v. State*, 418 So. 2d 1223, 1225 (Fla. 3d DCA 1982)). Under the "reverse *Williams* rule," a defendant may introduce similar fact evidence to "shift suspicion" to another person, so long as the evidence of past criminal conduct of that other person is "of such nature that it would be admissible if that person were on trial for the present offense." *Savino*, 567 So. 2d at 894. The Florida Supreme Court grounded this reciprocal opportunity for a defendant in the text of section 90.404(2)(a), explaining that "there is nothing in the language of section 90.404(2)(a) . . . which precludes the use of evidence offered by a defendant in a criminal

case." *Rivera*, 561 So. 2d at 539 (quoting *Brown v. State,* 513 So. 2d 213, 215 (Fla. 1st DCA 1987)). Therefore, because the text of section 90.404(2)(a) provides an equal opportunity for both the prosecution and the defense, the same admissibility standard governs "*Williams* rule" and "reverse *Williams* rule" evidence. *Savino*, 567 So. 2d at 894 ("[S]uch evidence should benefit a criminal defendant no more than it should benefit the state.").

The majority opinion correctly identifies that section 90.404(2)(c) is fundamentally different than section 90.404(2)(a). Subsection (2)(c) creates an opportunity only for the prosecution: "In a criminal case in which the defendant is charged with a sexual offense, evidence of the *defendant's* commission of other crimes, wrongs, or acts involving a sexual offense is admissible and may be considered for its bearing on any matter to which it is relevant." § 90.404(2)(c)1., Fla. Stat. (2024) (emphasis supplied). As a result, there is no "reverse" rule to be grounded in the text of this provision of the Florida Evidence Code.

In addition, subsection (2)(c) appears to be an abrogation of the *Williams* rule, not an extension of it. *See McLean v. State*, 934 So. 2d 1248, 1259 (Fla. 2006) (explaining that the similar provision in subsection (2)(b) abrogates certain cases applying the *Williams* rule). Therefore, neither the "*Williams* rule" nor the "reverse *Williams* rule" should be extended to subsection (2)(c).

For these reasons, when Torbit advanced his "reverse *Williams* rule" argument under section 90.404(2)(c) rather than section 90.404(2)(a), the argument became meritless as a matter of statutory interpretation.

II

On appeal, Torbit also invokes the Due Process and Confrontation Clauses in support of his "reverse *Williams* rule" argument, claiming that the denial of his evidence of Pasinski's collateral sexual offenses infringed his "constitutional right to present a full defense."

Torbit is correct that, through the Due Process and Confrontation Clauses (as well as the Compulsory Process Clause), the Constitution "guarantees criminal defendants a meaningful

11

opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324–25 (2006). This right to present a complete defense prohibits evidence rules that "infringe upon a weighty interest of the accused" and are "arbitrary" or "disproportionate to the purposes they are designed to serve." *Id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). An evidence rule is "arbitrary" if it excludes important defense evidence but does not serve any legitimate purposes. *Id.*

By its plain text, section 90.404(2)(c) excludes defense evidence of collateral sexual offenses committed by a third party but permits the State to introduce evidence of collateral sexual offenses committed by the defendant, therefore it creates an evidence rule potentially implicating the defendant's right to present a complete defense. *See Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir. 2010) (noting that the right to present a complete defense includes a "third-party culpability defense"). Moreover, the Supreme Court has been "particularly suspicious of state trial rules which provide nonreciprocal benefits to the State when the lack of reciprocity interferes with the defendant's ability to secure a fair trial." *Wardius v. Oregon*, 412 U.S. 470, 474 n.6 (1973); *see also Harris v. Thompson*, 698 F.3d 609, 632–33 (7th Cir. 2012) (observing the Supreme Court's pattern in favoring a "parity" principle, such that "a state rule that restricts the presentation of testimony for the defense but not the prosecution will generally be deemed arbitrary").

In this case, however, Torbit never asserted any constitutional argument in the trial court with respect to his evidence of Pasinski's alleged collateral sexual offenses. His evidentiary argument was phrased entirely as a "reverse *Williams* rule" argument. He never invoked the Due Process or Confrontation Clause in relation to section 90.404(2)(c), therefore the State never had an occasion to defend the statute's legitimate purposes or its proportionality to those purposes, and the trial court never ruled on any such issue. *Holmes*, 547 U.S. at 324–26. As a result, Torbit failed to preserve any constitutional argument that, in view of the State's allowance under section 90.404(2)(c) to introduce evidence of Torbit's collateral sexual offenses, he also should be permitted to introduce evidence of Pasinski's alleged collateral sexual offenses. *See Reese v. Fla. State Hosp.*, 343 So. 3d 648, 648 (Fla. 1st

DCA 2022) ("To preserve an issue for appellate review, a litigant must present the issue to the trial court in a timely, specific manner and obtain a ruling." (quoting *Sparre v. State*, 289 So. 3d 839, 849 (Fla. 2019))).

Finally, even if Torbit had successfully raised a challenge to the constitutionality of section 90.404(2)(c), it is not clear that the trial court could have remedied the unconstitutionality by permitting Torbit's evidence about Pasinski. Because of the separation of powers, a court cannot rewrite section 90.404(2)(c) to permit the admissibility of collateral sexual offense evidence offered by a defendant when the Legislature has not chosen to allow such evidence. *See Fla. Dep't of Revenue v. Fla. Mun. Power Agency*, 789 So. 2d 320, 324 (Fla. 2001) ("Under fundamental principles of separation of powers, courts cannot judicially alter the wording of statutes where the Legislature clearly has not done so."); *see also Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) (quoting *Virginia v. Am. Booksellers Ass'n, Inc.,* 484 U.S. 383, 397 (1988)) (noting that the separation of powers principle does not allow a court to "rewrite" a law "to conform it to constitutional requirements").

––––––––––––––––––––––––––––

Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.

James Uthmeier, Attorney General, and David Welch, Assistant Attorney General, Tallahassee, for Appellee.